**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| In re: | | Chapter 13 |
|---|---|---|
| **GLENN RUSSELL HILTON** and | | Case No. 12-61102 |
| **JULIE WRIGHT HILTON,** | | |
| **Debtors.** | | |

**MEMORANDUM DECISION SUSTAINING DEBTOR'S
OBJECTION TO PROOF OF CLAIM**

The matter before the Court is the trustee's and debtors' objections to the creditor's deficiency proof of claim. For the reasons set forth below, the Court overrules the trustee's objection but sustains the debtors' objection.

**FACTUAL BACKGROUND**

Glenn and Julie Hilton filed a voluntary petition for chapter 13 relief on May 4, 2012. *Chapter 13 Voluntary Petition*, ECF Doc. No. 1 (May 4, 2012). On their schedules, the Hiltons listed their primary residence, 431 Snow Hill Lane, Shipman, VA, 22971, as having an appraised value of $415,000.00. *See Balance of Schedules*, ECF Doc. No. 10, at 1 (May 18, 2012). Two separate liens encumbered the property. *See id.* at 10. As of the petition date, there was an outstanding balance of $306,908.74 on the first debt, secured by a deed of trust granting Branch Bank and Trust Co.'s mortgage division ("BB&T Mortgage") a lien on the property. *Response to Debtor's Objection to Claim*, ECF Doc. No. 48, at 1 (Aug. 1, 20013). The outstanding balance on the second debt was $142,234.18 as of the petition date. *Id.* On this obligation, the Hiltons are liable as guarantors of a commercial debt incurred by Mrs. Hilton's now-defunct cosmetics company, the Blue Ridge Gypsy Corporation. *Id.* This debt is also secured by a deed of trust granting Branch Bank and Trust Co.'s commercial lending division ("BB&T

Commercial") a lien on the property, as well as on inventory of the corporation.[1]  *Id.*  Although BB&T entities hold both liens, BB&T Commercial asserts that, due to federal banking regulations, the bank's mortgage side must be an "entirely distinct" entity from its commercial side, so the two lien holders in this action are effectively separate entities.[2]  Hearing Transcript (hereinafter "Transcript") at 9, *In re Hilton*, No. 12-61102 (Bankr. W.D. Va. Sept. 16, 2013).

Accordingly, BB&T Commercial[3] filed a secured proof of claim against the estate on May 23, 2012, for $142,234.18.  *See* Claim 3-1 (May 23, 2012).  It then amended this claim on September 16, 2012, but it did not change the amount claimed.  *See* Claim 3-2 (Sept. 16, 2012).  On May 24, 2012, BB&T Mortgage[4] filed a secured proof of claim for $306,908.74.  Claim 4-1 (May 24, 2012).  The bar date for non-governmental entities to file claims against the estate was September 13, 2012.  BB&T Commercial did not file a deficiency claim before the bar date.

The Hiltons filed their chapter 13 plan on May 18, 2012.  *See Chapter 13 Plan*, ECF Doc. No. 12 (May 18, 2012).  The plan provided for payment of 100% of the unsecured claims.  Transcript at 5, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013).  Under Paragraph 3(B) of the plan, upon confirmation, the Hiltons proposed to surrender their interest in the property to BB&T Mortgage.  *See Chapter 13 Plan*, ECF Doc. No. 12, at 3 (May 18, 2012).  According to

---

[1] The Hiltons granted the deed of trust to BB&T Commercial prior to the deed of trust to BB&T Mortgage; however, the BB&T Commercial deed was subordinated to the other deed of trust pursuant to a subordination agreement.  *Response to Debtor's Objection to Proof of Claim*, ECF Doc. No. 48, at 2 (August 1, 2013).

[2] There is some confusion in the record regarding the names of the BB&T entities and which entity filed which claim.  At the hearing and in the responses filed to the objections, counsel for the BB&T Commercial asserted that BB&T Mortgage filed Claim 4-1 and was represented by separate counsel.  *See* Transcript *passim*, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013) and *Response to Debtor's Objection to Claim*, ECF Doc. No. 48 *passim* (Aug. 1, 2013).  The claims register, however, shows that "Bb&t" actually filed Claim 4-1, and "BB&T Mortgage" filed Claims 3-1 and 3-2.  Despite this confusion, in this opinion, the Court will follow the nomenclature used at the hearing and refer to BB&T Mortgage as having filed Claim 4-1 and BB&T Commercial as having filed Claims 3-1 and 3-2.

[3] Listed on the Claims Register as "BB&T Mortgage."

[4] Listed on the Claims Register as "Bb&t."

the terms of the plan, confirmation thereof would terminate the automatic stay as to the surrendered collateral, allowing BB&T Mortgage immediately to institute foreclosure proceedings and to liquidate the property in satisfaction of the secured portion of its debt. *Id.* Thereafter, BB&T Commercial would apply the balance of the proceeds to its debt. *Id.* In the event of a deficiency resulting from the surrender and sale of the property, Paragraph 11(C) of the plan expressly provided:

> Any unsecured proof of claim for a claim of deficiency that results from the surrender and liquidation of collateral noted in Paragraph 3(B) of this plan must be filed by the earlier of the following or such claim shall be forever barred: (1) within 180 days of the date of the first confirmation order confirming a plan providing for the surrender of said collateral, or (2) within the time period for the filing of an unsecured deficiency claim as established by any Order granting relief from the automatic stay with respect to said collateral. Said unsecured proof of claim for a deficiency must include appropriate documentation establishing that the collateral surrendered has been liquidated, and the proceeds applied, in accordance with applicable state law.

*Id.* at 6. Without objection, the Court confirmed the plan on October 23, 2012. *See Order Confirming Plan*, ECF Doc. No. 32 (Oct. 23, 2012). Based on this date of confirmation, pursuant to Paragraph 11(C) of the plan, BB&T Commercial had until April 21, 2013, to file a proof of claim for any deficiency remaining after applying the balance of the proceeds to its debt. Transcript at 7, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). Since confirmation of the plan, the Hiltons have paid nearly $14,000 to the trustee, are ahead on their payments, and have cooperated fully. *Id.* at 3.

Upon confirmation, the Hiltons surrendered the property per the terms of the plan.[5] According to the arguments of BB&T Commercial at the hearing, BB&T Mortgage did not, and

---

[5] The Hiltons sent a letter to BB&T on July 30, 2012, informing BB&T that they had abandoned the property and moved out of the area. *See* Exhibit C.

3

could not, proceed with foreclosure sale due to an unreleased prior lien on the property. *Id*. at 10.[6]

On April 18, 2013, BB&T Mortgage filed a deficiency claim in the amount of $34,824.58, with documentation evidencing the existence of the original secured interest but not the liquidation of the property or the actual amount of the deficiency claim. Claim 12-1 (Apr. 18, 2013). BB&T Mortgage filed this proof of claim, even though it was for a potential deficiency on BB&T Commercial's loan. At trial, counsel for BB&T Commercial offered a rough explanation for how BB&T Mortgage determined the amount of the claim. Transcript at 12, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). Counsel suggested that BB&T Mortgage subtracted the balance of first secured claim as of the petition date from the appraised value of the house, and then subtracted that resulting amount from the amount of the second secured claim; however, he offered no evidence to corroborate that assertion.[7] *Id*.

Soon after filing the estimated deficiency claim, both the chapter 13 trustee and the Hiltons filed objections to it. *See Trustee's Objection to Proof of Claim 12-1*, ECF Doc. No. 40 (April 26, 2013) and *Debtor's Objection to Claim No. 12*, ECF Doc. No. 46 (July 2, 2013). Both objections asserted that the deficiency claim was in violation of the confirmation order, since it was devoid of the specified documentation. *Trustee's Objection to Claim*, Doc. No. 40, at 1 (Apr. 26, 2013) and *Debtor's Objection to Claim*, Doc. No. 46, at 1 (July 2, 2013). BB&T Commercial responded to both objections, and the Court held a hearing on September 16, 2013, to resolve the dispute.

---

[6] Apparently, BB&T Mortgage finally cleared up the title issue on September 13, 2013, on the Friday before the Monday morning hearing on the objection to the claim. Counsel for BB&T Commercial argued at the hearing that the title defect had been rectified on September 13, 2013, but provided no evidence for the record of this fact. *Id.*

[7] For further discussion and calculations, see *infra* note 10.

4

At the hearing, counsel for the Hiltons argued that the claim should be barred, because it did not comply with the express language of the confirmation order, which bound the parties to the terms included in the plan absent a motion to modify the order under Federal Rule of Bankruptcy Procedure 9024.  Transcript at 4–5, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013).  The Hiltons also asserted that BB&T Commercial had done nothing to foreclose on the inventory collateral that also secures the loan, had not withdrawn or reduced its previously-filed secured claim, and had not disclosed the procedure BB&T Mortgage used to estimate the value of the proof of claim it filed.  *Id.* at 7–8.  Finally, the Hiltons argued that they surrendered their house in accordance with the plan and had done nothing to thwart or delay the foreclosure sale—i.e., they had "clean hands."  *Id.* at 5, 8.

Conversely, BB&T Commercial argued that because BB&T Mortgage was unable to foreclose on the property, and BB&T Commercial is separate from BB&T Mortgage, the Court should continue the hearing and allow BB&T Commercial time to supplement its deficiency claim with the necessary documentation after the foreclosure sale concludes.  *Id*. at 14.  Moreover, BB&T Commercial claimed that the "spirit" of Paragraph 11(C) was to bar wholly unjustified claims rather than meritorious claims that suffered from minor procedural defects, such as this one.  *Id.* at 11.  Finally, BB&T Commercial asserted that its estimated deficiency claim was actually very favorable to the Hiltons, because BB&T Mortgage based its calculations on the amounts listed by the Hiltons in their schedules, while it justifiably could have claimed a higher deficiency amount.  *See id.* at 12.

Finally, the trustee argued that the claim should be barred for purposes of finality and closure in the claims allowance process.  *Id.* at 37.

5

At the September 16 hearing, the Court took under advisement the issue of whether the estimated proof of claim filed by BB&T was proper pursuant to the terms of the confirmation order.

**DISCUSSION**

*A.     Conclusions of Law*

Both the debtors and the trustee based their objections on the binding effects of the plan's language and BB&T Commercial's failure to comply fully with the procedures provided therein.[8] The objections rely on section 1327 of the Code and the preclusive nature of the language included in confirmed chapter 13 plans. The Court agrees that section 1327 applies to this controversy, however, concludes that the analysis for this controversy is not solved solely through reliance upon the plan language.  Here, when the plan provides requirements for allowance of a proof of claim, the Court will not sustain an objection to a claim allegedly based on a violation of the confirmation order, without first applying the burden-shifting framework prescribed by the Fourth Circuit in *In re Harford Sands Inc.*[9] The Court addresses each of these standards accordingly.

1.  Section 1327 and the Plan's Preclusive Effect

As mentioned above, both objections essentially boil down to the extent of the plan's binding effect on the parties.  Section 1327 of the Code explains how a confirmed plan affects the rights of the debtors and creditors in a bankruptcy.  Subsection (a) provides, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor

---

[8]     For the purposes of clarity, the Court will heretofore refer to this claim as being BB&T Commercial's proof of claim rather than BB&T Mortgage's.

[9]     372 F.3d 637, 640–41 (4th Cir. 2004).

6

is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

In considering the effects of section 1327(a), courts should afford the language of the plan considerable weight and treat a confirmed chapter 13 plan as "a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s]." *In re Murphy*, 474 F.3d 143, 148 (4th Cir. 2007) (citing *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. N.D. Ind. 1994) (alteration in original)).

A bankruptcy court confirmation order generally is treated as *res judicata. In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993). So long as creditors receive notice sufficient to satisfy due process under the Fifth Amendment, a plan's language is the final and binding expression of the law of the case. *See id.* With respect to due process, the Supreme Court has held that the Constitution merely requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950)). In fact, as long as the parties meet this relatively low burden and there are no objections, confirmation may be binding even if the bankruptcy court improperly approved the plan. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 273–74 (2010) (holding that the order confirming the chapter 13 plan bound the parties even though the bankruptcy court did not make a finding of "undue hardship" to enable it to discharge the debtor's student loans under section 523(a)(8)).

Thus, the terms of a plan, as consummated in a confirmation order, bind the parties almost absolutely thereto, absent any Constitutional infirmities. In the case before the Court

today, however, the analysis cannot stop there, as the objections are to a proof of claim, implicating a distinct jurisprudential analysis from that of section 1327.

### 2. Proofs of Claim and *In re Harford Sands Inc.*

The Bankruptcy Code creates the basic framework for the claims-filing process. Section 501 authorizes any creditor of an estate to file a proof of claim. *See* 11 U.S.C. § 501(a). Pursuant to section 502, the courts must allow any timely-filed proof of claim unless a "party in interest" objects—such as, the debtor, the trustee, or another creditor. *See* 11 U.S.C. § 502(a). If such a party objects, the court must then determine the amount and validity of the claim. *Id*. at § 502(b).

Furthermore, when a claim filed pursuant to Sections 501 and 502 is based on writing, "a copy of the writing shall be filed with the proof of claim." FED. R. BANKR. P. 3001(c)(1). Although this provision seems mandatory, subsection (f) provides that a proof of claim filed in accordance with Rule 3001 merely constitutes prima facie evidence of the validity and amount of the claim. *Id.* at 3001(f). Thus, courts have held that failing to supply this documentation does *not* disallow the proof of claim entirely but, instead, simply deprives the claim of prima facie validity. *See In re Harford Sands Inc.*, 372 F.3d 637, 640–41 (4th Cir. 2004); *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); *In re Goeller*, No. 12-17123-RGM, 2013 WL 3064594, at *1–*2 (Bankr. E.D. Va. June 19, 2013).

Pursuant to the aforementioned provisions, the Fourth Circuit has constructed a burden-shifting framework for determining the validity of proofs of claim. *See generally In re Harford Sands Inc.*, 372 F.3d 637 (4th Cir. 2004). When a claimant properly files a proof of claim with all of the required supporting documentation, it is prima facie evidence of the claim's validity and the amount the debtor owes. *In re Falwell*, 434 B.R. 779, 783 (Bankr. W.D. Va. 2009); FED.

8

R. BANKR. P. 3001(c) & (f).  If a claimant files a prima facie valid proof of claim, "[t]he burden . . . shifts to the debtor to object to the claim" and to "introduce evidence to rebut the claim's presumptive validity."  *In re Harford Sands*, 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted).  Any evidence the debtor offers in rebuttal must negate at least one fact necessary to the claim's legal sufficiency, "must be sufficient to demonstrate the existence of *a true dispute* and must have probative force equal to the contents of the claim."  *In re Falwell*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009) (emphasis in original).

If, on the other hand, the claimant fails to file the requisite documentation under Rule 3001, "the debtor need[s] only [to] object to the claim pursuant to the applicable rules," rather than to produce "evidence of equally probative value in rebuttal."  *Id.* at 783–84.  If the objecting party bases his objection merely on the claimant's failure to file documentation, however, that objection is insufficient for the court to disallow the claim.  *Id.* at 786.  Therefore, even without prima facie validity, the objecting party must have some other legally sufficient grounds for challenging the claim besides just failing to file the documentation.  *Id.*

Ultimately, if the debtor carries his burden of making a proper objection to a claimant's proof of claim, the burden shifts back to the claimant to prove the amount and validity of the claim by a preponderance of the evidence.  *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004).  If the claimant cannot produce sufficient evidence, the claim fails, and the court should sustain the objection.

*B.*    *The Objections*

As an initial matter, the Court finds that the burden-shifting framework from *Harford Sands* controls the matters before the Court today.  The Court also finds, however, that the confirmed plan altered the deadline and the documentation requirements for filing a deficiency

9

proof of claim. The plan enlarged the deadline and expanded the documentation requirements. Instead of merely filing the documentation usually sufficient to meet the terms of Rule 3001(c), the plan required the claimant also to file documentation evidencing the consummation of the sale as well as the proper application of the proceeds to the secured portion of the debt. Without such evidence, the proof of claim does not satisfy all of the documentation requirements under Rule 3001, as modified by the plan.

As mentioned above, pursuant to section 1327(a) of the Code, such a provision in the plan binds all parties who had the opportunity to object, whether or not they actually did object. In this case, paragraph 11(C) of the plan mandated that any "unsecured proof of claim for a deficiency must include appropriate documentation establishing that the collateral surrendered has been liquidated, and the proceeds applied, in accordance with applicable state law." *Chapter 13 Plan*, ECF Doc. No. 12, at 6 (May 18, 2012). BB&T Mortgage and BB&T Commercial had knowledge of this provision, which specifically applied to BB&T Commercial's deficiency claim, and neither party objected. This language in the plan binds the Hiltons and the BB&T entities alike, absent some allegation of a violation of due process.

The Court concludes that BB&T Mortgage timely filed a proof of claim as an interested party on BB&T Commercial's behalf; however, according to the terms of the plan, the documentation included was not sufficient to afford the claim prima facie validity. Nevertheless, under the *Harford Sands* framework, this defect alone is insufficient to defeat the claim. Consequently, the burden remains on a party in interest to object to the validity of claim before the Court can determine allowance.

Here, both the trustee and the Hiltons objected to the proof of claim. The Court will now consider each of these objections in turn.

### 1. The Trustee's Objection

The chapter 13 trustee's objection to BB&T Commercial's claim asserted, in part: "No such documentation has been provided. Trustee therefore asks disallowance of Claim 12-1." *Trustee's Objection to Claim No. 12-1*, ECF Doc. No. 40, at 1 (Apr. 26, 2013). At the September 16, 2013, hearing, the trustee elaborated on his objection, arguing that considerations of finality and closure supported the disallowance of the claim. Transcript at 37, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). Further, the trustee suggested that the point of including such language in a chapter 13 plan is to afford the trustee certainty and finality for distribution purposes. *Id.* at 37–38. When the debtor does nothing to hinder a creditor's compliance with the plan, such language should bind the parties.

The trustee objected to the failure of BB&T Commercial to file the proper documentation with its proof of claim. As stated above, a claimant's failure to include the proper documentation alone is not a sufficient basis for a court to sustain an objection to the claim. *See In re Falwell*, 434 B.R. 779, 786 (Bankr. W.D. Va. 2009). Thus, without other legally sufficient grounds upon which to base the trustee's objection and negate the authenticity of the claim, it is overruled.

The Court agrees with the trustee's statements at the hearing regarding finality and certainty; however, the Court believes that there are mechanisms available to mitigate these concerns—specifically, Bankruptcy Code section 502(c). Subpart (1) of that subsection specifically authorizes the use of an "estimated" proof of claim for "any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). Such a claim is "allowed," meaning that the Code expressly authorizes the trustee to pay it out, as if it was not contingent or unliquidated. *See In re Richardson*, 307 B.R. 485, 487–88 (Bankr. D. Md. 2004) ("An allowed claim . . . is an

11

entitlement to the holder of the right to receive a distribution from the bankruptcy estate . . . ."). Thus, until objected to, the trustee could disburse upon a timely filed estimated claim. To estimate a claim, the debtor and creditor could reach an agreement regarding the amount of the estimated claim; or if not, the creditor, the debtor, or the trustee could move the court to determine the amount of the unsecured deficiency claim. *See In re Sneijder,* 407 B.R. 46, 54–55 (Bankr. S.D. N.Y. 2009) (describing the use of section 506 and section 502(c)(1) to determine the amounts of deficiency claims).

In this case, however, BB&T Commercial's deficiency proof of claim was not specifically "estimated," did not disclose its estimation methodology, and was not filed pursuant to an agreement with the Hiltons regarding the amount of the estimated claim. Based on the record in this case, the Court does not believe there is sufficient evidence for it to estimate the amount. Moreover, even if BB&T Commercial wished for its claim to be considered an estimated proof of claim, it never informed the Hiltons or the Court of this intention prior to the hearing on the objections. Absent the consent of the parties or a separate order affixing the amount, or sufficient evidence to permit the Court to value the deficiency amount, the Court declines to consider BB&T Commercial's deficiency claim to be a valid estimated proof of claim.

### 2. The Hiltons' Objection

In their objection filed on July 2, 2013, the Hiltons claimed, "paragraph 11[C] of the confirmed plan requires that any such unsecured proof of claim for a deficiency must be filed by 4/21/13 . . . and include appropriate documentation establishing that the collateral surrendered has been liquidated, and the proceeds applied, in accordance with applicable state law." *Debtor's Objection to Claim No. 12 of BB&T*, ECF Doc. No. 46, at 1 (July 2, 2013). The

objection further stated that BB&T Mortgage, upon the date of filing the objection, had not yet liquidated the collateral, though the Hiltons had surrendered it in accordance with the terms of the plan. *Id.*

Additionally, at the hearing, the Hiltons argued that BB&T Commercial had not released any portion of its previously-filed secured claim on the collateral, had a lien against Blue Ridge Gypsy Corporation's inventory upon which it has not foreclosed, and had not disclosed the means of valuation it used to calculate its deficiency claim. Transcript at 33–37, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). As evidence, Mr. Hilton testified that neither he nor his wife did anything to hinder BB&T Mortgage's foreclosure of the property and that BB&T Commercial had made no efforts to foreclose upon the inventory collateral in Mrs. Hilton's company. Transcript at 26–28, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). Finally, Mr. Hilton testified that on the proof of claim, there was neither an explanation for the existence of the deficiency nor an indication of how the claimant calculated that deficiency. *Id.* at 24–25.

The Court finds that the Hiltons' objection was sufficient to carry their burden of calling into question the validity of BB&T Commercial's proof of claim. Although similar to the trustee's objection, by also discussing BB&T Mortgage's failure to liquidate the property and BB&T Commercial's failure to apply the proceeds therefrom to its debt, the Hiltons' objection also implicated legal bases for challenging the claim other than only improper documentation. The Hiltons raised a defense to the accuracy of the amount, and the validity of the status as unsecured, based on the absence of liquidation and application of the foreclosure proceeds. Such an objection is sufficient to shift the burden back to BB&T Commercial to prove the claim's ultimate validity.

Furthermore, even if the claim were prima facie valid, the Hiltons introduced evidence to call the claim's validity into question. The Hiltons showed, through testimony and evidence, that BB&T Mortgage had not yet foreclosed upon the property, so there was no way for them to evaluate the validity and amount of the deficiency claim as filed. The Court believes that such evidence would be sufficient to rebut the prima facie validity of the claim by calling into question the amount claimed with evidence of equal or greater force and veracity as the documentation provided by the claimant. Nevertheless, the Court holds that this claim is not prima facie valid.

Once the Hiltons carried their burden to negate the claim's sufficiency, BB&T Commercial still had the opportunity to prove the amount and validity of the claim by a preponderance of the evidence at the hearing. The Court does not believe it has carried this burden.

At the hearing, BB&T Commercial argued that BB&T Mortgage had not foreclosed on the property due to a titling issue and the two entities were wholly distinct; that the language in the plan was not intended to bar claims such as this one; and that the inventory collateral of Mrs. Hilton's company was more of a hassle than it was worth to them. Transcript at 11–14, *In re Hilton*, 12-61102 (Bankr. W.D. Va. Sept. 16, 2013). Finally, BB&T Commercial explained the methodology it believed BB&T Mortgage employed while estimating the deficiency claim it filed on BB&T Commercial's behalf. *Id.* at 11–12.

In support of its position, BB&T Commercial did not put on any evidence; however, it requested that the Court to take judicial notice of the amounts listed in the Hiltons' schedules. *Id.* at 33. Counsel for BB&T Commercial did cross-examine Mr. Hilton, but the examination

14

revolved primarily around the channels of distribution for the inventory collateral of Mrs. Hilton's cosmetics company. *Id.* at 29–32.

The Court concludes that BB&T Commercial did not prove the validity and amount of the claim by a preponderance of the evidence. Regarding the *amount* of the claim, BB&T Commercial explained that it believed BB&T Mortgage determined the claimed amount by subtracting the first secured claim from the appraised value of the house, then subtracting that resulting amount from the amount of the second secured claim. However, BB&T Commercial supplied the Court with no evidence to support this contention, and in fact, in applying this formula, the Court comes to a different amount from that claimed.[10] With no evidence of how BB&T Mortgage calculated the amount or any explanation given as to why the amount claimed was inconsistent with the alleged method, the Court cannot find that this information is sufficient to prove the amount of the claim by a preponderance of the evidence.

Moreover, there is no information regarding the value of the inventory collateral of Mrs. Hilton's cosmetic company, against which BB&T Commercial also possessed a lien to secure its loan. BB&T Commercial claimed that liquidating the collateral would not be worth its time; however, it produced no evidence as to the expense required to foreclose on the inventory or the revenue it could potentially derive from it. In fact, the only evidence the Court has concerning the inventory comes from Mr. Hilton's testimony at the hearing—the collateral was worth between $70,000 and $90,000; BB&T Commercial never even attempted to foreclose upon it; and the Hiltons had been selling the products over the internet prior to losing its contract with

---

[10] As stated above, Claim 12-1 was for of $34,824.58. Per the methodology explained at the hearing, subtracting the first secured claim ($306,908.74) from the appraised value of the house ($415,000), the Court finds the remaining amount to be $108,091.26. Then, subtracting that amount from the amount of the second secured claim ($142,234.18), the Court finds the actual amount of the deficiency claim to be $34,149.92. Thus, if this method was the procedure BB&T Mortgage used to estimate the deficiency, it overestimated the claim by $681.66.

Walgreens. *Id.* at 28, 31.  This evidence only shows the Court that it was possible that BB&T Commercial could have salvaged some value from the inventory, if it had moved more quickly.

Regarding the general *validity* of the deficiency claim, BB&T Commercial has also supplied the Court with scant evidence.  It is clear that the property, as scheduled, will not cover the balances of both of the debts; however, the Court cannot consider the amounts scheduled as conclusive in that regard.  Moreover, without evidence of the value of the inventory collateral, the Court cannot tell if there would be *any* deficiency remaining.  Because the property remains unsold and we do not know the value of the inventory, there is no evidence of a deficiency at this time; there is only an expected deficiency.  Therefore, BB&T Commercial did not prove the existence of its deficiency claim by a preponderance of the evidence.

Finally, the Court recognizes that BB&T Commercial was unable to adhere to the terms of the plan and confirmation order because of an apparent title defect that delayed the foreclosure process, but this fact does not change the Court's opinion.  Cognizant of federal banking regulations, the Court does not believe that BB&T Commercial could not have, at least, discussed the matter with BB&T Mortgage to rectify the issue.  Moreover, the fact that BB&T Mortgage filed the deficiency claim on BB&T Commercial's debt indicates that the BB&T entities might not be as distinct as BB&T Commercial contends.  At minimum, BB&T Commercial could have called a representative of BB&T Mortgage to testify to the expected sale price of the property, or the valuation methodology used in estimating the claim.

Additionally, both BB&T entities knew of the timeframe to file the deficiency claim under the terms of the plan, and neither party objected to it.  Pursuant to section 1327(a) of the Code, the plan binds the parties to those terms definitively.  Even so, BB&T Commercial could have petitioned the Court, or sought the consent from the Hiltons, for an enlargement of time to

file its claim when it realized the plan deadline was approaching. It did not. Parties include such language in their plans, not only to afford finality to the amounts claimed against the estate, but also to encourage secured creditors to foreclose and liquidate their collateral in an efficient and timely fashion.

Moreover, as of this hearing, the property remained unliquidated, yet the terms of the plan required such liquidation to have occurred nearly five months earlier. The Court is not disallowing a claim filed a week, or even a month, tardily. This delay was substantial and prejudicial to the unsecured creditors.

Without at least some evidence as to the methodology used by BB&T Mortgage to estimate the claim, the value of the inventory collateral, or the actual existence of a deficiency, the Court concludes that BB&T Commercial has not carried its burden of proving by a preponderance of the evidence the validity and amount of its unsecured deficiency claim.

## CONCLUSION

In conclusion, the Court **OVERRULES** the trustee's objection to BB&T Commercial's proof of claim but **SUSTAINS** the Hiltons' objection. The Court finds that under the terms of the confirmed plan, the parties altered the documentation requirements under the Rules for filing a proof of claim. This modification, however, did not alter the general *Harford Sands* framework, under which the Court must analyze objections to proofs of claim.

Under these modified provisions, a claim filed without the documentation delineated in the plan was not afforded prima facie validity. Accordingly, the debtors' objection that called into question the legal sufficiency of the claim shifted the burden to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. The claimant was unable

17

to do so. Thus, the deficiency claim fails and any amended claim for a deficiency resulting from this debt in this case is hereby barred.

It is so ordered.

Date: December 2, 2013

_____
Rebecca B. Connelly
U.S. Bankruptcy Judge

18